In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1383, 08-1435, 08-2226 & 08-2596

RONALD VENDETTI,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

COMPASS ENVIRONMENTAL, INC.,

*Defendant-Appellant,*
*Cross-Appellee.*

and

WILLIAM J. BRODERICK,

*Defendant,*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3556—**Marvin E. Aspen**, *Judge.*

ARGUED JANUARY 13, 2009—DECIDED MARCH 24, 2009

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge*. Compass, the principal defendant (the other defendant need not be discussed separately), appeals from the grant of summary judgment to the plaintiff, Vendetti, in a suit for breach of contract governed by Illinois law. On the view we take of the case, there is no need to decide the plaintiff's cross-appeal, in which he seeks relief beyond what the district court awarded him; so we dismiss it.

The plaintiff, an accountant, was the comptroller for a company in Stone Mountain, Georgia, that was acquired by the defendant. Both companies were engaged in the business of cleaning up contaminated sites. The defendant had an office in Stone Mountain, but its headquarters was in Chicago and the plaintiff, while willing to work for the defendant, did not want to leave Stone Mountain. So he negotiated for a provision in his employment contract which stated that "Unless otherwise mutually agreed to, Executive [i.e., the plaintiff] shall be located in his current Company office location (the 'Principal Location') during the Term [of the contract] or such other office located within 45 miles of the Principal Location." The contract authorized the plaintiff to terminate it on 30 days' written notice for "Good Reason," defined as a material breach of the contract. If he did that he would be entitled to severance pay equal to a year's salary, and likewise "in the event [he] terminates this Agreement following the Company's request to move his place of employment more than 45 miles from the Principal Location." The plaintiff could even, without being guilty of a breach of contract, terminate the contract without having "Good Reason" to do so. But in that event he would have to give

the defendant 90 days' written notice and he would not be entitled to any severance pay. The district court ruled that the plaintiff was entitled to the year's severance pay because the defendant had violated the location clause.

Although such a clause is a common provision in an employment contract (as is a clause allowing rather than forbidding the employer to relocate the employee, as in *Gayheart v. Wilson UTC, Inc.*, 1999 WL 184167 (N.D. Ill. Mar. 29, 1999), so that the employee cannot argue that relocation is a constructive discharge), we have not found an appellate decision interpreting such a clause, though an oral relocation clause was at issue in *Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18 (2d Cir. 1994). We give a few examples of typical location clauses: "The Executive's principal office shall be located in Central Ohio." http://agreements.realdealdocs.com/employment-agreement/executive-employment-contract-1589748/. "The principal location of Executive's employment with the Company shall be the present location in which the Executive performs such services, although Executive understands and agrees that Executive may also be required to travel from time to time for business reasons." http://contracts.onecle.com/fortress/edens-emp-2007-01-17.shtml. "'Involuntary termination' shall mean . . . the relocation of you to a facility or a location more than 50 miles from your then present location, without your express written consent, except for a relocation to the Southern California area within the 12 months following the date of this Agreement." http://contracts.onecle.com/conor/shanley.emp.2002.04.15.shtml. "For purposes of this Agreement, the Employee shall have 'Good Reason' to

terminate his employment during the term of this Agreement if . . . the Company requires the Employee to relocate outside the Metropolitan area of New York City and the Employee declines to do so." http://contracts.corporate. findlaw.com/agreements/barr/zeiger.emp.1999.12.13.html. " 'Constructive Termination without Cause' shall mean a termination of the executive's employment at his initiative as provided in this agreement following the occurrence, without the executive's prior written consent, of one or more of the following events: . . . the relocation of company's principal office, or the Executive's own office location as assigned to him by the company, to a location more than 50 miles from the present location of the company's principal office." www.elinfonet.com/prov/41. (All these web sites were visited on March 16, 2009.)

Notice that these clauses sometimes refer to the employee and sometimes to his office, do not define "relocation," and sometimes do and sometimes do not mention travel. So they bristle with potential interpretive problems, as does the clause in this case, and to navigate them successfully will require the aid of common business sense. "All interpretation is contextual, and the body of knowledge that goes by the name of 'common sense' is part of the context of interpreting most documents, certainly most business documents." *McElroy v. B.F. Goodrich Co.*, 73 F.3d 722, 726-27 (7th Cir. 1996).

The district court read the clause to forbid the defendant to send the plaintiff on a business trip more than 45 miles from his office in Stone Mountain if the plaintiff did not want to go. That is a deeply problematic

interpretation. The defendant's headquarters was in Chicago and the plaintiff's boss—the defendant's chief financial officer—was located there. The plaintiff was an accountant and it must have been obvious to him when he signed the employment contract that the merger of his former company into the defendant would present accounting issues that would require trips to Chicago to resolve. It is true that the contract says that the plaintiff shall be located in Stone Mountain, rather than that the plaintiff's office shall be located there, but if we want to get really literal, we would have to interpret the contract to mean that he could not be sent beyond the 45-mile radius even if he wanted to be—which would be ridiculous.

Had the parties wanted to give the plaintiff a veto over business travel, there were many clearer ways of doing so than by the form of words they chose, which are most naturally interpreted to mean that he could not be reassigned from Stone Mountain to Chicago. He could be sent on a business trip; but if the company said to him for the next year you will work out of the Chicago office, he could terminate the contract and receive the agreed-on severance even if the company told him that it was not relocating him to Chicago, or changing his "principal location." But those are the polar cases and we must consider where the present case lies in relation to them.

Some months after acquiring the plaintiff's former employer, the defendant installed a software system to integrate the accounting systems of the two companies and placed the plaintiff in charge of the integration project. This required occasional trips to Chicago, which he made

without protest. Later his duties were enlarged to include accounting assignments for both companies and assisting in the preparation of the end-of-the-month closing statements for the books of account. This required monthly trips of a few days' duration to Chicago, which again he made without protest.

In March 2006 the defendant's new chief financial officer told the plaintiff that two accountants in the Stone Mountain office were being discharged and the plaintiff would have to train accountants in the Chicago headquarters in the duties of the discharged employees. The chief financial officer also wanted the plaintiff to assist in the year-end audit of the company's books and in the preparation of the monthly closing statements. In an email on which the plaintiff heavily relies, the CFO told him that beginning the following month "you need to plan on being in the Chicago office the last two weeks of each month to assist with the close and other accounting work that needs to be done." The email acknowledged that the plaintiff opposed this arrangement but concluded: "I have decided the most efficient means of completing the close and working on other necessary items and projects is to have you work out of the Chicago office two weeks a month. Therefore, you need to plan on being here the last two weeks each month for the indefinite future."

After some attempts at negotiation, including the plaintiff's offering to spend "2 to 3 days (maximum) in Chicago each month," he sent a written notice to the defendant that he would terminate his employment in

30 days because the requirement that he work out of the Chicago office for two weeks a month for the indefinite future violated the location clause. The notice was sent and received on April 21, 2006. He had previously agreed to be in Chicago on April 24 to assist with the 2005 year-end audit (which was not yet complete), the monthly closing, and the training of the Chicago accountants, but now he refused to go, on the ground that the demand that he be in Chicago that day was "part and parcel" of the two-week-a-month order. His termination became effective on May 21; and when the company refused to give him severance pay, on the independent grounds that he had been required to give 90 days' notice in order to be allowed to terminate his employment without fault, that his refusal to come to Chicago on April 24 was insubordination warranting termination for cause, and that the two-week-a-month order was not a relocation order, he brought this suit.

If the plaintiff's decision to resign was for "Good Reason," that is, because of a material breach of the employment contract, he did not have to give 90 days' notice, but only 30 days'. It might seem that the defendant's action in changing the plaintiff's place of employment more than 45 miles from the "Principal Location" (if that is how the two-weeks-a-month order should be interpreted, a question we defer for the moment) would, by violating the location clause, be a material breach of the contract. But if so, why is there a separate provision that entitled him to severance pay "in the event [that he] terminates this Agreement following the Company's request to move his place of employment more than

45 miles from the Principal Location"? If such a request were a "Good Reason" for him to resign, there would be no need for the provision we just quoted. That provision seems to treat relocation as an independent ground for severance pay that does not, however, dispense with the requirement of giving 90 days' notice; only termination for "Good Reason" requires just 30 days' notice.

The district judge rejected this interpretation on the ground that ordering the plaintiff to spend two weeks a month in Chicago was a "demand" rather than a "request" and therefore was not within the quoted provision. But that would imply that if the company "requested" the plaintiff to relocate to Chicago and when he refused the company said, "Fine; it was only a request," the plaintiff could terminate the contract and collect a year's pay because the company had requested that he relocate rather than ordering him to do so.

Even if that were a correct interpretation, still, the plaintiff's refusal to show up in Chicago on April 24 was insubordinate and therefore grounds for discharge. He had not resigned yet—he couldn't, because even the 30 days' notice that he incorrectly says was all that he was required to give before resigning had not expired, for remember that he had sent the notice only three days earlier. The district court thought this irrelevant, because as we said the court had interpreted the no-relocation provision as a no-travel provision, an interpretation we reject—and for the additional reason that for at least a year the plaintiff had been making trips to the Chicago headquarters without any intimation that he could veto

a travel order. The behavior of parties to a contract is a good guide to interpretation. *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 298 (7th Cir. 2002) (Illinois law). "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning." *Restatement (Second) of Contracts*, § 202, comment g (1981).

Anyway there was no violation of the location clause. Relocation would mean assigning the plaintiff full time to the Chicago office, so that he would have to move his home from Stone Mountain to Chicago or a Chicago suburb. The two-week-a-month stint would have allowed the plaintiff to retain his home in Stone Mountain, especially since the defendant would be paying for both his living expenses in Chicago and his travel expenses, including the expenses of traveling back to Stone Mountain on the weekend between the two weeks of each monthly stint. Of course there is a point at which a requirement of frequent travel would amount to a de facto relocation—suppose the defendant had told the plaintiff he must spend three weeks a month in Chicago at his own expense for the next two years. That would be an extreme case, coupling an unreasonable amount of continuous absence from home with a refusal to pay living expenses. "There will come a point in time when travel to the same location from another city, day after day, becomes a *de facto* relocation. Weekly travel for parts of five days for six weeks, however, will not establish 'relocation' as a matter of law . . . . Although a six- to eight-week stay in a location over a thousand miles away might reasonably be considered a 'relocation,' a requirement of

weekly travel that begins on Monday and ends on Friday morning can be distinguished." *Peach v. Ultramar Diamond Shamrock*, 229 F. Supp. 2d 759, 769 (E.D. Mich. 2002), aff'd, 109 Fed. Appx. 711 (6th Cir. 2004). Our case involves fully reimbursed weekday-only travel. The fact that the company was paying all living and travel expenses is significant because these costs would make the company think twice before trying to circumvent the location clause by renaming relocation "business travel."

The plaintiff puts great weight on the fact that the two-weeks-a-month stint would continue "for the indefinite future." But we read "indefinite" to mean that the company did not know how long it would need him to spend two weeks a month in Chicago, not to mean "forever." The expenses incurred by the company would, as we have pointed out, give the defendant an incentive to end the travel program as soon as possible.

The plaintiff presented evidence of bad blood between him and the chief financial officer and suggests that the latter was trying to force him to resign without the company's having to pay him severance pay. Such a maneuver, motivated (if the plaintiff's evidence is believed) by spite, would disserve the company, but organizations cannot always prevent subordinates from pursuing vendettas against *their* subordinates. If, however, we are right that the company did not violate the location clause, the CFO's motive in ordering the plaintiff to travel more than the latter wanted to do is irrelevant.

Ordinarily when summary judgment is reversed, the case is set for trial. But the defendant has asked us to

reverse the judge's denial of *its* motion for summary judgment, and the plaintiff has not stated or implied that in the event we reverse the grant of summary judgment in his favor he wants a trial. Nor has he identified any triable issues. We therefore order the entry of summary judgment in the defendant's favor and thus the dismissal of the case.

REVERSED WITH DIRECTIONS.