**2026 Tex. Bus. 38**



# The Business Court of Texas, First Division

| | | |
|---|---|---|
| RYAN LUNDERBY, | § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 25-BC01A-0061 |
| DOMINIUM DEVELOPMENT | § | |
| AND ACQUISITION, LLC, | § | |
| *Defendant.* | § | |

═══════════════════════════════════════

## Memorandum Opinion and Order
## Denying Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion to Construe

═══════════════════════════════════════

¶1 On April 27, 2026, the Court held a hearing on *Plaintiff Ryan Lunderby's Traditional Motion for Partial Summary Judgment* and on *Dominium's Rule 166(g) Motion to Construe Lunderby's 2025 Employment Agreement*, both seeking resolution of the same question: the interpretation of Lunderby's contractual obligation to "relocate to Dallas." Upon consideration of the record and the arguments presented, the Court denies each motion as set forth herein.

## I.    Summary of the Dispute

¶2    At issue is a clause in a 2025 *Amended and Restated Employment Agreement* between Plaintiff Lunderby and Defendant Dominium. Texas law applies. *See* Pl.'s Mtn. Ex. A-2 at APP 000061. The contract language in question reads, "The Employee [Lunderby] has agreed to relocate to Dallas to serve as the cultural head of the Central Region and the Company has agreed to certain incentives related to such relocation."[1] Pl.'s Ex. A-2 at APP 000043. This provision was carried forward from the parties' prior 2021 Agreement. Pl.'s Ex. A-1 at APP 000007.

¶3    The "Background" section of the 2025 Agreement continues:

> Subsequent to his move to Dallas the Employee worked in the capacity of Regional Leader of the Central Region and the Employee and the Company desire to enter into an agreement to set forth the terms and conditions of the Employees [sic] employment with the Company in his various capacities, further defined by the addition of **Exhibit F** to the Agreement.

---

[1] Exhibit E of the 2025 Agreement also addresses relocation and contains a list of incentives to follow "[i]n accordance with that relocation." Pl.'s Ex. A-2 at APP000074. Such incentives include, among others, a relocation bonus to facilitate the closing of a home purchase in the Dallas area. *See id.*; *see also* Pl.'s Ex. A-1 at APP000037.

Pl.'s Ex. A-2 at APP 000043 (emphasis in original). The attached Exhibit F articulates terms including a reduction in the number of days allowed for "remote working ability" following the initial term of the 2021 Agreement and continuing through the next 24 months. *See id.* at APP000079.

¶4 The parties do not dispute that the 2021 Agreement required Lunderby to "relocate to Dallas." Their disagreement lies in whether Lunderby has breached the subsequent 2025 Agreement, which contained the same contractual obligation, based on the following undisputed facts:

(A) Lunderby's contractual obligation to "relocate to Dallas" first appeared in the 2021 Agreement.

(B) Lunderby purchased a home in Southlake, Texas, and moved there with his family in 2021.[2]

(C) The obligation to "relocate to Dallas" remained in the 2025 Agreement, dated effective January 1, 2025.

(D) Lunderby and his wife closed on a new home in Minnesota on May 7, 2025. They sold their home in Southlake, Texas, in June 2025.

---

[2] No argument was made that Lunderby's move to Southlake, a suburb of Dallas (rather than the city or county of Dallas), failed to satisfy Lunderby's contractual obligation to "relocate to Dallas" under the 2021 Agreement. In keeping with the parties' mutual view, the Court broadly construes the term "Dallas" to include surrounding cities/suburbs.

> (E)    Lunderby's spouse and their minor son moved into the new Minnesota residence. Lunderby leased an apartment in Irving, Texas.

The parties dispute whether Lunderby continues to reside in the Dallas area or whether he changed his residence back to Minnesota and whether such a move—if any—constitutes a violation of his employment agreement.

¶5    Plaintiff's motion seeks judgment as a matter of law on three legal determinations that could be partially dispositive of the pending litigation: "(1) Lunderby's 2025 Agreement only required <u>him</u> to relocate to Texas and did not require . . . his family to relocate or reside in Texas; (2) the 2025 Agreement is . . . devoid of any requirement that Lunderby's wife . . . and adolescent son permanently reside in Texas; and (3) Lunderby did, in fact, relocate to and change his physical residence to Texas in 2021, in accordance with the 2025 Agreement." Pl.'s Mtn. at pp. 1-2.

¶6    Dominium brings a separate motion asking the Court to construe Lunderby's obligation to "relocate to Dallas" as requiring a permanent move, complaining that Lunderby seeks to exclude from discovery—and ultimately, from trial—any evidence concerning the location of the residence of his wife and child. *See* Def.'s Mtn. at p. 3 ("Lunderby argues for the categorical exclusion of evidence directly relevant to whether he actually "relocated to

Dallas"—most notably, evidence about where his family lives—before this Court has construed the term"). Lunderby concedes to taking the position that his immediate family's residence is irrelevant.

## II. Analysis

¶7 "A court's primary objective when construing contracts 'is to ascertain and give effect to the parties' intent as expressed in the instrument.'" *Thompson v. Anchor Cap. GP*, 2026 Tex. Bus. 21, at ¶31 (1st Div.) (quoting *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023)). "A court will examine the entire agreement and give every provision effect so none will be meaningless." *Crain v. N.*, 730 S.W.3d 375, 382, 2026 Tex. Bus. 4, at ¶9 (8th Div.). "[W]hen the provisions of a company agreement are unambiguous, a court must enforce them as written and take care not to rewrite them under the guise of interpretation." *Id.* at ¶9 (citing *Abdullatif v. Choudhri*, 561 S.W.3d 590, 609-10 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)). But "[i]f a contract is ambiguous, its meaning is a question of fact for a jury to decide, and 'extraneous evidence may be admitted to help determine the language's meaning.'" *Equinor Energy LP v. Lindale Pipeline, LLC*, 731 S.W.3d 324, 327 (Tex. 2026) (quoting *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 480 (Tex. 2019)).

¶8    The crux of the contractual dispute here is the meaning of "relocate to Dallas." Lunderby argues that this provision requires only a *temporary* move, and that the contract merely required Lunderby to move to Dallas in one single instance—wholly satisfied by his move to Southlake in 2021. Lunderby further contends that his leasing of an apartment in Irving satisfied any ongoing obligation to reside in Dallas. *See* Pl.'s Resp. at pp. 11-12. Dominium argues that "relocate to Dallas" requires a *permanent* move and involves Lunderby and his family remaining in their Southlake home or otherwise sharing a house together in the Dallas area. Dominium contends Lunderby's apartment in Irving is a false front, masking his actual move back to Minnesota, based on emails and other various evidence.

¶9    The word "'relocate' means to 'establish or lay out in a new place.'" *Pedernales Elec. Coop., Inc. v. White*, No. 03-22-00797, 2024 WL 5058720, at *5 (Tex. App.—Austin Dec. 11, 2024, pet. denied) (quoting *Relocate*, Webster's Third New Int'l Dictionary 1919 (2002)). Applying this definition, the contract required Lunderby to establish or lay out (something) in Dallas. Thus, the plain language takes the analysis only so far.

¶10   Texas case law—particularly in the employment context—is sparse on the exact obligation imposed on a party required to "relocate"

pursuant to a contract, absent guidance in the contract itself; in fact, there are no objective criteria. However, facts that do or do not constitute relocation have been evaluated in other employment contexts, such as when employees contract against or are protected by employee benefit plans from forced relocation. *See, e.g.*, *Vendetti v. Compass Env't, Inc.*, 559 F.3d 731, 732, 734–35 (7th Cir. 2009) (holding employee was not "relocated" when compelled to report to a different location for two weeks each month at employer's expense); *Peach v. Ultramar Diamond Shamrock*, 229 F. Supp. 2d 759, 769 (E.D. Mich. 2002), aff'd, 109 Fed. Appx. 711 (6th Cir. 2004) (holding that employee benefits review committee reasonably concluded relocation had not occurred where employee was required to travel to another location "for six weeks, with company-paid transportation to-and from each week"); *Graham Eng'g Corp. v. Adair*, No. 16-CV-2521, 2021 WL 9204331, at *12 (M.D. Pa. Feb. 10, 2021) (holding employee's allegations of impending, forced relocation were merely hypothetical).

¶11   As cases from other states illustrate, where a person reports to work is not the sole factor in determining whether there has or has not been a relocation. When an employee contracts to resist relocation, those courts looked to the number of days the employee was compelled to report to a

different city for work, the short-term or long-term duration of such assignment, and whether the employee's travel to that location was treated as a personal expense or a reimbursable one borne by the company in order to assess whether it constituted a relocation. And in general, if the employee was made whole for any necessary travel expenses and was otherwise permitted to make his home in his chosen location away from the place where he reports to work, the employee was found not to have been relocated.

¶12 These opinions arise under wholly distinguishable facts and the laws of different states but are not entirely unhelpful. Extending the reasoning common to them all, it seems that relocation may be related to whether the employee is able to maintain a home in the location of his choosing and who bears the expenses of travel incurred as a result. For instance, if an employee personally absorbs all travel expenses and makes a home in a chosen location away from the place where he reports to work, then—regardless of the frequency with which he reports to work at a designated location—it may be the case that the employee has not relocated to the place he reports to work.

¶13 In this case, Dominium did not simply contract for Lunderby to report to work in Dallas. Such language would have been clear and easy to

articulate and would have allowed Lunderby to make his home in any chosen location. Instead, Dominium bargained for Lunderby to "relocate to Dallas" and "serve as the cultural head of the Central Region." Pl.'s Ex. A-2 at APP 000043. Giving effect to these terms, the Court finds Dominium did not bargain for Lunderby to simply report to work in Dallas, and that "relocate to Dallas" must mean more than that.

¶14 Further, the Court finds that the relocation term and related incentives afforded to Lunderby are rendered meaningless if the obligation does not extend for the duration of the contract. The language concerning the periodic vesting of Dominium's up-front contribution to Lunderby's initial Southlake home purchase indicates Lunderby's (anticipated) continued presence. Pl.'s Ex. A-2 at APP 000074. It would be absurd to read the obligation as allowing Lunderby to move to Dallas at 8:00 am on his first day of employment and move back to Minnesota at noon on the same day—or even thirty days later—and claim to have "relocated" in fulfillment of his obligations. Courts must avoid construing contracts in a manner that leads to absurd results. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). Moreover, in the absence of any shorter time obligation, the Court cannot read one into the agreement. *See In re Davenport*, 522 S.W.3d

452, 457 (Tex. 2017) (stating that courts should not add language to parties' contract). The only reasonable interpretation is that the relocation provision applies for the entire term of the contract.

¶15 Unfortunately, that is as far as certainty reaches with respect to the meaning of "relocate to Dallas." While the contract as a whole makes clear that the phrase refers to something more than reporting to work in Dallas, and that the obligation must endure for the life of the contract, any further specificity remains an open question of fact. It is possible that relocation to a place means establishing oneself and one's household goods in that place. *See Morris v. McFarland Clinic P.C.*, No. 03-CV-30439, 2006 WL 8436653, at *10 & n.9 (S.D. Iowa Mar. 7, 2006), aff'd, 214 Fed. Appx. 634 (8th Cir. 2007) (relocation expenses included cost of moving household goods and personal transport). It is also possible that renting an apartment in one place while one's family resides in a house elsewhere constitutes evidence of a breach of a contractual promise to relocate. *Jacobs v. Bancplus Mortg. Corp.*, No. 07-97-0278, 1998 WL 197665, at *3–5 (Tex. App.—Amarillo Apr. 22, 1998, pet. denied) (applying Florida law, affirming jury verdict for employer on anticipatory repudiation defense to breach of contract where San Antonio

employee rented apartment in Jacksonville, Florida, while employee's family and family home remained in San Antonio).

¶16 In sum, the Court finds that Lunderby's relocation obligation constituted more than simply working in Dallas and existed for the duration of his employment at Dominium. However, aside from anticipating that Lunderby would "clos[e] on [a] home in the Dallas area," Pl.'s Ex. A-2 at APP 000074, the employment agreement offers no guidance as to what constitutes relocation. And there are no objective criteria that conclusively establish whether a person has or has not relocated as a matter of law. For this reason, the Court finds that the contract is ambiguous. The *Jacobs* case, being very nearly analogous, is especially persuasive and confirms that the appropriate time and place for this issue to be resolved is at the parties' scheduled jury trial.

## III. Conclusions

¶17 Though the Court finds the phrase "relocate to Dallas" ambiguous and not susceptible to interpretation as a matter of law, Lunderby's motion correctly argues that only Lunderby undertook a contractual obligation to relocate to Dallas, and that neither Lunderby's spouse nor his son are under any contractual obligation to Dominium (either to live in Dallas

or to satisfy any other term of Lunderby's contract). However, no party has pleaded to enforce a contractual obligation against Lunderby's family. *See* Def.'s Resp. at p. 1. Accordingly, there are no claims or issues on which to render judgment with respect to those assertions.

¶18   The Court denies Lunderby's motion for partial summary judgment as to the only potentially-dispositive legal determination sought: that Lunderby's move to Southlake in 2021 satisfied his relocation obligations under the 2025 Agreement. In fact, the Court denies both Lunderby's and Dominium's motions to the extent that they seek a ruling as a matter of law as to the meaning of "relocate to Dallas" and whether Lunderby complied with his relocation obligations under the 2025 Agreement—these are questions a jury will have to answer. To the extent raised by Dominium's motion, case law supports the relevance of the facts concerning the home of Lunderby's wife and child, and the Court will take up such issues as they arise throughout the course of discovery and trial of this cause. *See, e.g.*, *Jacobs*, 1998 WL 197665, at *3–5.

¶19   IT IS THEREFORE ORDERED that *Plaintiff Ryan Lunderby's Traditional Motion for Partial Summary Judgment* is DENIED.

¶20 IT IS FURTHER ORDERED that *Dominium's Rule 166(g) Motion to Construe Lunderby's 2025 Employment Agreement* is DENIED.

SO ORDERED.

_____
ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON: June 9, 2026.